LOUISE ANN FERNANDEZ
California Bar No. 86263
ANTHONY PACHECO
California Bar No. 128277
DAVID M. POITRAS P.C.
California Bar No. 141309
JEFFER, MANGELS, BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-4308
Telephone: (310) 203-8080/Facsimile: (310) 203-0567

BRETT A. AXELROD
Nevada Bar No. 5859
FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 699-5901/Facsimile: (702) 597-5503

*Attorneys for Plaintiff Garth Ancier*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Chapter 7 |
| MICHAEL F. EGAN, III, an individual | Case No.      BK-S-15-16493-ABL |
| Debtor. | |
| GARTH ANCIER, | ADV. No. _____ |
| Plaintiff, | **COMPLAINT TO DETERMINE THE NONDISCHARGEABILITY OF DEBTS OWED BY DEBTOR MICHAEL F. EGAN, III TO GARTH ANCIER PURSUANT TO 11 U.S.C. § 523** |
| vs. | |
| MICHAEL F. EGAN, III, | |
| Defendant. | |

LA 12602399v1

Plaintiff Garth Ancier ("Plaintiff"), by and through his undersigned counsel, hereby alleges as follows:

**INTRODUCTION**

1. Defendant Michael F. Egan, III ("Defendant" or "Egan"), filed an action in the United States District Court for the District of Hawaii entitled *Michael F. Egan, III v. Garth Ancier,* U.S.D.C., District of Hawaii, Case No. 14-c-v00188 SOM BMK (the "Action"), based on scurrilous and false allegations of sexual assault purportedly committed by Mr. Ancier in Hawaii, when in fact Mr. Ancier was never in Hawaii at the time the alleged assaults took place. Faced with a Rule 11 motion, and having tacitly acknowledged that his claims in the Action were without merit, Defendant dismissed the complaint in the Action on June 25, 2014, without prejudice. Far from having any merit, the Action was brought to smear, harass and severely injure Mr. Ancier as part of an avowed and very public campaign by Mr. Egan and Mr. Egan's counsel to troll for new clients who would enable them to shake down other entertainment industry executives with threats of sexual assault charges and thereby continue Mr. Egan's scheme of making money through fraudulent means. Such an improper ulterior motive and the obvious lack of evidence supporting his claims renders Defendant liable for malicious prosecution and abuse of process.

2. To redress Egan's malicious prosecution and abuse of process against Ancier, on June 27, 2014, Ancier filed an action against Egan in the United States District Court for the District of Hawaii entitled *Garth Ancier v.Michael F. Egan, III, Jeffrey M. Herman and Mark F. Gallagher* U.S.D.C., District of Hawaii, Case No. 14-cv-00294 JMS RLP, based on malicious prosecution and abuse of process (the "Malicious Prosecution Action").

3. Jeffrey Herman and Mark Gallagher, named above as defendants in the Malicious Prosecution Action, were the lawyers representing Egan and who filed the Action against Plaintiff. The fact that the Action was a malicious sham and part of a scheme to extort money from others was disclosed in discovery. Tellingly, the falsity of the claims has now been admitted by Herman and Gallagher. They not only have paid Plaintiff Ancier a seven-figure monetary settlement, but also took the unprecedented step of publically issuing written apologies to Plaintiff Ancier. Herman states in his apology:

LA 12602399v1

- 2 -

> I sincerely apologize for bringing lawsuits against you on behalf of my former client Michael Egan. . . . Based on what I know now, I believe that I participated in making what I now know to be untrue and provably false allegations against you. Had I known what I learned after filing the lawsuits, I never would have filed these claims against you. I deeply regret the pain, suffering and damage the lawsuits and publicity have caused you, and your family, friends and colleagues. [¶] I sincerely regret my role in this matter and for the harm that I caused.

4. A hearing on Plaintiff's Motion for Summary Judgment in the Malicious Prosecution Action was set to be heard by the District Court on November 24, 2015. Facing certain judgment against him, Egan filed this chapter 7 case on November 18, 2015 (the "Petition Date"). The Malicious Prosecution Action has been stayed by 11 U.S.C. § 362(a) since the Petition Date.

5. Plaintiff brings this action for a determination that the debts owed to Plaintiff by Egan arising out of malicious prosecution and abuse of process are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

## JURISDICTION AND VENUE

6. This adversary proceeding arises under title 11 of the United States Code, or arises in or is related to the bankruptcy case of Egan within the meaning of 28 U.S.C. § 1334(b). This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b), 1334(b) and 1334(e).

7. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

9. Defendant is subject to the jurisdiction of this Court.

10. Pursuant to Rule 7008.1 of the Local Bankruptcy Rules for the United States Bankruptcy Court, District of Nevada, Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

**THE PARTIES**

11. Plaintiff is a citizen of California and a resident of Los Angeles County, California.

12. Defendant Egan is the debtor in the above-captioned bankruptcy case.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

13. Defendant filed the complaint (the "Complaint") in the Action on April 21, 2014. The Complaint alleged that Mr. Egan was sexually assaulted in California between 1998 and 2000 at the home of third parties Marc Collins-Rector and Chad Shackley, California residents, by a number of individuals. Claims based on such allegations were and are clearly time-barred under California law but arguably would not be barred by Hawaii's extended statute of limitations (HRS § 657-1.8) (which was just two days from running when Defendant filed the Complaint) if the alleged conduct had in fact occurred in Hawaii. To attempt to avail themselves of the Hawaii statute, Defendant forum shopped and based his malicious bad faith claims on salacious and utterly concocted allegations that Mr. Ancier sexually assaulted Mr. Egan at the Paul Mitchell estate in Kailua, Hawaii during two trips that Mr. Egan purportedly made to Hawaii with Messrs. Collins-Rector and Shackley and others between August 1 and October 31, 1999.

14. Specifically, the Complaint alleged that in 1998 Mr. Egan was a teenage actor who was allegedly put on the payroll of a digital entertainment company called Digital Entertainment Network ("DEN"), in which Mr. Ancier was allegedly one of many investors. According to the Complaint, Mr. Egan was subjected to repeated sexual assault by the two principals of DEN, Messrs. Collins-Rector and Shackley, at their estate in California. The Complaint also alleged falsely that Mr. Egan was sexually assaulted by Mr. Ancier at that estate during the same period. Mr. Egan had never made any charges or filed any suit against Mr. Ancier in California based on those allegations.

15. Mr. Egan did, however, take action in California against Messrs. Collins-Rector and Shackley, including a civil lawsuit against them and their DEN colleague Brock Pierce filed in July 2000 (the "2000 Lawsuit"), in which Mr. Egan ultimately obtained a $2.3 million default judgment and $1 million in post-judgment interest. Mr. Ancier was not named as a defendant and there is no mention of his name in the complaint in the 2000 Lawsuit.

16. It was not until more than fourteen years after the fact – long after California's statute of limitations had run but only two days before Hawaii's statute of limitations was then allegedly set to expire on April 24, 2014 – that Mr. Egan filed the Action, claiming, for the first time, that Mr. Egan was sexually assaulted at the California estate of Messrs. Collins-Rector and Shackley not only by them, but also by Mr. Ancier. Mr. Egan also filed similar suits in the District of Hawaii against three other entertainment industry figures. The claims for relief in all four suits were based on allegations that the defendants sexually assaulted Mr. Egan during two trips he took to Hawaii sometime between August 1 and October 31, 1999.

17. All four suits were filed by Mr. Gallagher, a Hawaii lawyer, while sponsoring the pending pro hac vice application of Mr. Herman, a Florida lawyer. Mr. Herman was previously suspended from practice for eighteen months by the Florida Supreme Court for an ethical violation. In addition, Mr. Herman has engaged in bad faith conduct before, in an Oregon District Court, where a judge permanently barred Mr. Herman from ever appearing in that judge's court as a sanction for Mr. Herman's misrepresentations and other bad faith conduct. That sanction was affirmed by the Ninth Circuit. See Pacific Harbor Capital, Inc. v. Carnival Airlines, Inc., 210 F.3d 1112, 1114-19 (9th Cir. 2000).

18. The allegations against Mr. Ancier leveled in the Complaint were completely false. As previously noted, the Complaint alleged that Mr. Ancier sexually assaulted Mr. Egan at the Paul Mitchell estate in Kailua, Hawaii on two of Mr. Egan's alleged trips to Hawaii between August 1 and October 31, 1999 and flew to Hawaii with Mr. Egan on a private jet on the second trip. But the facts are that Mr. Ancier had never flown on a private jet to Hawaii, had never visited the Paul Mitchell estate, and was not in Hawaii during the time of the two alleged trips. In fact, Mr. Egan himself was not on either of those two trips. The Complaint's allegations of sexual assault of Mr. Egan by Mr. Ancier in California were also patently false.

19. In addition, during that time, Mr. Ancier was working virtually non-stop at his new job as the President and programming chief of NBC Entertainment. This work occurred during the busiest time of the year for a programming chief and required his presence at nearly daily meetings in Los Angeles and sometimes in New York.

20. Discovery in the Action revealed that the Action was part of a reprehensible fraudulent money-making scheme initially plotted by Egan. This is evidenced by a statement made by Egan in connection with a Ponzi business scheme for which Egan was recently indicted. Obviously sensing the collapse of his Ponzi scheme, Mr. Egan outlined this plot to a friend who happened to be one of his "investors," stating that "if all else failed" he could go after wealthy gay men in Hollywood and falsely claim that he had been abused. He remarked that those executives would have to settle to avoid the publicity. When asked by the same individual if he had in fact ever been abused, Egan responded, "God no."

21. All else had clearly failed for Egan by 2013, when his Ponzi scheme had imploded, a six-figure judgment had been entered against him in North Carolina, and he had learned that he was under investigation by the FBI. Herman was fully aware of the FBI investigation as early as January, 2014. Egan then found Herman, who in turn found Gallagher.[1]

22. Accordingly, in or around April 2014, Mr. Egan, with the assistance of Mr. Gallagher and Mr. Herman, launched yet another fraudulent money-making scheme, focused on pressuring Hollywood executives to settle false claims to avoid negative and damaging publicity.

23. In furtherance of Defendant's scheme to threaten and shakedown entertainment industry executives with threats of sexual assault charges, Mr. Egan and Mr. Herman held a press conference on April 17, 2014, at the Four Seasons Hotel in Beverly Hills, California. At the press conference, Defendant announced the filing of a complaint against a Hollywood executive (not Mr. Ancier), which had been filed the day before in the District of Hawaii by Mr. Gallagher, alleging Mr. Egan was sexually assaulted in California and Hawaii by the Hollywood executive as part of a Hollywood sex ring. At the April 17, 2014 press conference, Mr. Herman claimed there was a pattern of sexual abuse in Hollywood and "[t]here are these pedophile rings that exist in Hollywood. What I intend to do is draw back a cloak and shine a light on this darkness." Mr.

---

[1] Mr. Egan has recently been convicted in federal court relating to his Ponzi scheme and he is presently serving a sentence of approximately of two years in federal prison (he is presently incarcerated in FCP Duluth, MN).

LA 12602399v1

- 6 -

Herman further promised to name additional "Hollywood types" in additional lawsuits to be filed in the coming week.

24. In continued furtherance of the fraudulent money-making scheme, the next day, on April 18, 2014, Mr. Herman appeared on HuffPostLive (an Internet-based video streaming website) in a webcam interview with Ricky Camilleri to discuss the April 17, 2014 press conference. In the interview, Mr. Herman again claimed there was a sexual predator ring involving men in Hollywood using their positions of power and influence to sexually exploit children. Mr. Herman stated he would be naming more "Hollywood names" on the following Monday (April 21, 2014) who were part of the pool parties in California and who had flown to Hawaii for parties where "they" sexually abused Mike (Mr. Egan).

25. Also in furtherance of the fraudulent money-making scheme, on Sunday, April 20, 2014, Mr. Herman announced on his law firm's website blog, at www. hermanlaw.com/blog, that a news conference would be held Monday at 2PM, with the headline: "Alert: Hollywood Executives To Be Named In Sexual Abuse Lawsuits Filed Monday."

26. On April 21, 2014 - after generating considerable publicity with the April 17, 2014 press conference, the April 18, 2014 HuffPostLive interview and Mr. Herman's April 20, 2014 blog announcement - Mr. Herman and Mr. Egan held yet another press conference at the Four Seasons Hotel in Beverly Hills, California, this time to announce the filing of three additional complaints against three additional entertainment industry executives, including the Complaint against Mr. Ancier. (Mr. Gallagher had filed the additional three complaints earlier that day in the District of Hawaii.) Mr. Egan's mother, Bonnie Mound, also attended and spoke at the press conference. The press conference was attended by at least nine media outlets as evidenced by the nine microphones placed in front of Mr. Herman, Mr. Egan and Ms. Mound. Besides publicizing the allegations in the Complaint, Mr. Herman further alleged there was a "Hollywood sex ring" and claimed, "I will continue to file cases on behalf of victims of sexual abuse and particularly exposing this Hollywood sex ring."

27. At the April 21, 2014 press conference, Mr. Herman further claimed that Mr. Egan always intended to name additional defendants to his 2000 Lawsuit and that the 2000 Lawsuit was

1  never intended to be about solely about Messrs. Collins-Rector, Shackley and Pierce, and that
2  there were other directors and producers in Hollywood who abused Mr. Egan.

3      28. At the press conference, Mr. Herman described the actions of the "Hollywood sex
4  ring" to include allegations that Mr. Egan was threatened, given gifts and promises of roles in
5  movies. However, there is no allegation in the Complaint of Mr. Egan being threatened at any time
6  by Mr. Ancier, nor any allegations that Mr. Ancier gave any gifts to Mr. Egan or made him any
7  promises of movie roles.

8      29. In order to garner undeserved sympathy and enhance the negative publicity, Ms.
9  Mound was allowed to speak at the press conference about her alleged attempts to hire prior
10 attorneys to take on her son's case, to alert the authorities and to involve the media, all to no avail.
11 She sobbed the entire time as she spoke.

12     30. By filing the frivolous Complaint and commencing a media campaign of false
13 information, Defendant's actions went beyond merely holding a press conference to publicize
14 allegations of child sexual abuse made in a public complaint. Each of these actions were done in
15 furtherance of the scheme to shakedown Hollywood executives "if all else fails" and as a
16 marketing tool to troll for new clients, employing a negative media campaign to punish Mr. Ancier
17 and to send a message to other potential defendants. Process was used for the collateral purpose of
18 coercing prominent gay men in the entertainment industry to pay up or face similar false damaging
19 publicity. This objective was a patently illegitimate use of process.

20     31. The press conferences, and the accompanying TV news broadcasts, internet articles
21 and news articles, were used to send a message to potential defendants of the alleged "Hollywood
22 sex ring" and Mr. Ancier to settle or suffer the consequences of a heavily publicized lawsuit. To
23 wit, the public threats to others, including Mr. Ancier, are not authorized by the legal process and
24 were aimed at an objective not legitimate in the use of the process.

25     32. Because the Complaint's frivolous allegations of sexual abuse were blatant forum
26 shopping and were filed without any reasonable and competent inquiry by counsel as required by
27 Rule 11 of the Federal Rules of Civil Procedure, Mr. Ancier's counsel wrote to Messrs. Herman
28 and Gallagher on April 25, 2014, alerting them to the fact that a Rule 11 Motion would be filed if

LA 12602399v1

- 8 -

they failed to withdraw the Complaint, and reminding them that their filing of the Complaint constituted a certification that they had conducted a reasonable pre-filing examination of the facts, including interviewing available witnesses and reviewing relevant documents prior to filing suit. Mr. Ancier's counsel also noted the fact that Mr. Egan had previously participated in law enforcement investigations concerning alleged sexual abuse by Mr. Collins-Rector and civil litigation in which he made similar allegations, without mentioning Mr. Ancier or any events in Hawaii.

33. Rather than offering any evidence that would tend to support the allegations in the Complaint, such as statements of witnesses who could corroborate the assertion that Mr. Ancier was in Hawaii during the time of Mr. Egan's alleged trips there, the response from Mr. Egan's counsel was to ask for Mr. Ancier's proof that he was not in Hawaii during that time. They then failed to respond to a follow up letter reminding them that they bore the burden of providing information demonstrating that their filing was factually supported and made in good faith, and offering to meet with them and review their evidence. Counsel's silence on what evidence they have to support their claims spoke volumes, and confirmed that they failed to conduct the requisite inquiry before signing and filing the Complaint.

34. On June 5, 2014, Mr. Ancier served Defendant with a Motion for Rule 11 Sanctions. In response, on June 25, 2014, Defendant voluntarily dismissed the Action, without prejudice (this followed the June 4, 2014 voluntary dismissal of the action against David Neuman, one of the three others who were sued in the United States District Court for the District of Hawaii by Mr. Egan). In the meantime, however, the damage to Mr. Ancier that was caused and indeed intentionally fostered by Defendant's institution and maintenance of the Action was considerable. In addition to being forced to spend hundreds of thousands of dollars in attorneys' fees and costs to defend against the Complaint's false allegations, Mr. Ancier was subjected to an onslaught of negative publicity, which was damaging to his hard earned reputation and ability to continue to generate business and attract investors.

35. It is patently obvious that Defendant filed the Complaint in Hawaii to try to take advantage of Hawaii's then statute of limitations, which possibly ran only two days after the

1   Complaint was filed. That statute made Hawaii the only jurisdiction in which the claims alleged in
2   the Complaint would arguably not be time-barred, a fact that Gallagher and Herman did not
3   dispute in their response to the Rule 11 warning letter from Mr. Ancier's counsel. Worse,
4   Defendant used this blatant forum shopping as the platform from which to launch their scheme to
5   shakedown Hollywood executives – including holding high profile press conferences at which Mr.
6   Egan spoke – in which he vowed to wage war on numerous unnamed members of the alleged
7   Hollywood elite. This use of Mr. Ancier as a pawn in a threatened widespread campaign against
8   entertainment industry executives was clear malicious conduct, harassment and not authorized by
9   the process.

10       36.    Moreover, as demonstrated above, the Complaint's allegations of sexual assault by
11  Mr. Ancier in Hawaii were clearly meritless. Indeed, because Mr. Egan was a layman presumably
12  unacquainted with Hawaii's statute of limitations and had not made any allegations about
13  purported assaults in Hawaii from 1999 until 2014, it is more than fair to infer that the fictitious
14  Hawaiian assaults were created solely to attempt to improperly satisfy the Hawaii statute of
15  limitations, for nefarious public relations purposes, for use as a marketing tool and to derive
16  undeserved economic benefit from Mr. Ancier and other entertainment industry executives. This
17  fabrication of facts in Hawaii that never took place, to attempt to create jurisdiction in a forum
18  where there was none, requires that Defendant be held accountable for malicious prosecution and
19  abuse of process.

20       37.    As set forth above, a hearing on Plaintiff's Motion for Summary Judgment in the
21  Malicious Prosecution Action was set to be heard on November 24, 2015 and Egan filed his
22  chapter 7 bankruptcy case on November 18, 2015.

23       38.    During the course of the Malicious Prosecution Action in Hawaii, *Egan failed to*
24  *produce a single document* in response to discovery requests or in his initial disclosures and he
25  invoked his Fifth Amendment privilege against self-incrimination, *refusing to answer every*
26  *question* asked of him in his deposition relating to the allegations in the Action and his contentions
27  in this lawsuit. Egan refused to testify whether the allegations in the Complaint were true. Egan
28

LA 12602399v1

- 10 -

invoked the Fifth Amendment and refused to answer any questions about his denials of or defenses to Plaintiff's allegations in the Malicious Prosecution Action.

39. In sum, the writing was on the wall. The District Court in Hawaii was on the eve of granting summary judgement against Egan when he filed this chapter 7 bankruptcy. Plaintiff brings this action to redress Egan's egregious actions, and except all debts from the discharge.

## FIRST CLAIM FOR RELIEF

### (Malicious Prosecution)

40. Plaintiff re-alleges and hereby incorporates by this reference paragraphs 1 through 39, inclusive, as if set forth fully herein.

41. Defendant initiated the Action with knowledge that the Action lacked probable cause as to any claim alleged therein against Mr. Ancier.

42. All claims against Mr. Ancier in the Action were dismissed in Mr. Ancier's favor.

43. At all relevant times, Defendant had no probable cause to initiate and/or continue to prosecute any of the claims alleged in the Action against Mr. Ancier. At no time did Defendant honestly or reasonably believe that there were grounds for any of the claims alleged in the Action against Mr. Ancier.

44. Defendant acted maliciously in bringing the Action against Mr. Ancier in that Defendant brought and/or continued to prosecute the Action without probable cause for doing so.

45. As a proximate result of Defendant bringing and/or continuing to prosecute the Action against Mr. Ancier without probable cause, Mr. Ancier has been damaged in a sum no less than $13,913,739, to be determined at trial. Mr. Ancier's damages include injury to his reputation and business standing in the community, the attorneys' fees and costs incurred by Mr. Ancier in the Action, and severe mental and emotional distress.

46. At all times herein mentioned, Defendant knew that the claims asserted against Mr. Ancier were legally untenable. Nevertheless, Defendant subjected Mr. Ancier to cruel and unjust hardship in conscious disregard of Mr. Ancier's rights in that Defendant filed fabricated claims

against Mr. Ancier. These acts therefore justify the awarding of punitive damages in addition to the actual damages set forth above.

## SECOND CLAIM FOR RELIEF

### (Abuse of Process)

47. Plaintiff re-alleges and hereby incorporates by this reference paragraphs 1 through 46, inclusive, as if set forth fully herein.

48. In instituting and maintaining the groundless Action against Mr. Ancier and holding salacious press conferences for the improper purpose of trolling for additional plaintiffs to wage his public campaign of threatening sexual assault allegations against entertainment industry executives, including Mr. Ancier, Defendant acted with an ulterior purpose and committed a willful act distinct from the use of process per se. His actions were willful acts in the use of process and not proper in the regular conduct of a sexual assault case. In making certain that Mr. Ancier was subjected to unwarranted civil process and scurrilous, false allegations as part of his scheme to troll for more plaintiffs, to intimidate more entertainment industry executives, and fraudulently induce settlement, Defendant acted in a definite manner not authorized by the process, or aimed at an objective not legitimate in the use of the process.

49. As a proximate result of these actions by Defendant, Mr. Ancier has been damaged in a sum no less than $13,913,739, to be determined at trial. Mr. Ancier's damages include injury to his reputation and business standing in the community, the attorneys' fees and costs incurred by Mr. Ancier in the Action, and severe mental and emotional distress.

50. At all times herein mentioned, Defendant knew that the claims asserted against Mr. Ancier were legally untenable. Nevertheless, Defendant subjected Mr. Ancier to cruel and unjust hardship in conscious disregard of Mr. Ancier's rights in that Defendant filed fabricated claims against Mr. Ancier. These acts therefore justify the awarding of punitive damages in addition to the actual damages set forth above.

LA 12602399v1

- 12 -

## THIRD CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C. § 523(a)(6))

51. Plaintiff re-alleges and hereby incorporates by this reference paragraphs 1 through 50, inclusive, as if set forth fully herein.

52. Defendant's actions as described above constitute willful and malicious injury as set forth in 11 U.S.C. § 523(a)(6), rendering any claim or debt arising out of Defendant's actions, to be nondischargeable in this bankruptcy case.

## RESERVATION OF RIGHTS

Plaintiff believes that additional claims in favor of Plaintiff against Defendant and/or other parties may exist. Plaintiff reserves any and all rights to bring such claims to the extent authorized by the Court and/or applicable law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

(1) On the First and Second Claims for Relief, Plaintiff requests a determination that Defendant is indebted to Plaintiff in the following amounts:

    a. $13,649,400 to compensate Plaintiff for losses resulting from damage to his reputation;

    b. An amount sufficient in the Court's judgment to compensate Plaintiff for his serious emotional distress including $11,090.00 for Plaintiff's medical expenses;

    c. Plaintiff's attorneys' fees and costs incurred in defending the Action in the amount of $200,240.35 and his public relations consulting fees and costs in the amount of $53,009.20; and plus

    d. Punitive damages in an amount sufficient in the Court's judgment to punish Defendant for his malicious conduct;

(2) On the Third Claim for Relief, Plaintiff requests a determination that any debt found owing by Defendant to Plaintiff pursuant to the First and Second Claims for Relief be excepted from any discharge entered in this bankruptcy case, pursuant to 11 U.S.C. § 523(a)(6); and

(3) Granting such other and further relief, as the Court deems just, proper and equitable, including Plaintiff's fees, costs, and expenses of this action.

Respectfully submitted,

Dated: February 18, 2016

FOX ROTHSCHILD LLP

By: */s/ Brett A. Axelrod*
    BRETT A. AXELROD

- AND -

JEFFER, MANGELS, BUTLER & MITCHELL LLP
LOUISE ANN FERNANDEZ
ANTHONY PACHECO
DAVID M. POITRAS P.C.

*Attorneys for Plaintiff, Garth Ancier*

LA 12602399v1

- 14 -